**Johnny ARMSTRONG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 46807.**

Court of Criminal Appeals of Texas.

Dec. 5, 1973.

Rehearing Denied Jan. 9, 1974.

Kerry P. Fitzgerald (on appeal only) Dallas, for appellant.

Henry Wade, Dist. Atty., and James B. Scott, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

This is an appeal from a conviction for murder with malice. The jury assessed punishment at death.

The record reflects that at about 4:30 P.M. on September 16, 1970, two black males attempted to rob a Gulf Service Station located at the intersection of Erving Street and Clarendon Street in Dallas. During the course of the attempted robbery, two witnesses observed one of the robbers shoot the operator of the service station and saw the robbers flee the scene of the crime.

The State introduced two witnesses, acquaintances of appellant, who testified that appellant admitted to them that he had shot a man while he was trying to rob a service station. As a result of appellant's admission to the witnesses, the weapon, a sawed-off shotgun, was found concealed in a weeded area near the home of one of the witnesses.

Following appellant's arrest on September 19, 1970, appellant made a written statement admitting that he shot deceased but that the shooting was in self-defense. A Jackson-Denno hearing was held by the court on the voluntariness of appellant's statement. The court found that the statement was voluntarily made following proper warnings and the trial judge admitted the statement into evidence.

Neither the voluntariness of the aforementioned statement nor the sufficiency of the evidence is challenged.

Appellant first contends that the imposition of the death penalty constitutes

cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. The death penalty was declared unconstitutional by the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, and Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. However, subsequent to the Supreme Court's opinion, appellant's sentence was commuted to life imprisonment by order of the Governor of Texas. On December 29, 1972, appellant was resentenced by the trial court to life imprisonment.

In Stultz v. State, Tex.Cr.App., 500 S. W.2d 853, we again decided that this question is moot. See Whan v. State, Tex.Cr. App., 485 S.W.2d 275; Antwine v. State, Tex.Cr.App., 486 S.W.2d 578; Hall v. State, Tex.Cr.App., 488 S.W.2d 94.

Appellant's first ground of error is overruled.

Appellant's second ground of error is quoted as follows:

"The prosecutor committed reversible error in his final argument to the jury during the hearing on guilt-innocence as he directly referred to appellant's failure to testify in his own behalf, in violation of Article 38.08 [Vernon's Ann.], C.C.P., Article 1, Section 10, of the Constitution of the State of Texas [Vernon's Ann.St.], and the Fifth Amendment of the United States Constitution."

The record reflects that during the course of the prosecutor's closing argument to the jury, appellant's attorney advised the court that appellant wished to make an argument to the jury on his own behalf. The court interrupted the prosecutor's argument and appellant was permitted to argue his case before the jury with admonishment by the court that he could only argue from the testimony. Following appellant's argument, the prosecutor continued his closing summation to the jury during which the prosecutor made the following remarks:

"MR. TOKOLY:[1] . . . After all the things he told you, the Defendant told you, I never heard him—he kept complaining about what the State said and the witnesses said and what they didn't say, but I never heard him say he didn't do it.

"MR. TAITE:[2] To which we will object, Your Honor.

"THE COURT: Sustained.

"MR. TAITE: Make a motion for mistrial.

"THE COURT: The jury will disregard it and not consider it for any purpose.

"MR. TOKOLY: I'm referring to his argument, Your Honor.

"THE COURT: Just a minute. The Defendant was instructed by the Court not to testify and to stay within the testimony. I sustain the objection.

"MR. TAITE: Move for a mistrial.

"THE COURT: Overruled.

"MR. TAITE: Exception.

"MR. TOKOLY: The law does not permit me to cross-examine him in his argument.

"THE COURT: Mr. Tokoly, the law doesn't permit you to cross-examine any of the attorneys when they argue. Why should it permit you to cross-examine the Defendant? He was making an argument to the jury.

"MR. TOKOLY: I wish I could.

"MR. HALSEY: Your Honor, we make an objection on that statement he just made as to comments.

"THE COURT: The jury will disregard it.

"MR. HALSEY: We ask for a mistrial.

1. The prosecuting attorney.

2. Appellant's attorney.

"THE COURT: Overruled.

"MR. HALSEY: Note our exception."

■ Article 38.08, V.A.C.C.P., prohibits comment on an accused's right to remain silent and his failure to testify. But for the court to find that there was such a comment, the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to the defendant's failure to testify must be a necessary one. It is not sufficient that the language might be construed on an implied or indirect allusion thereto. Ramos v. State, Tex.Cr.App., 419 S.W.2d 359. See also Hardy v. State, Tex.Cr. App., 496 S.W.2d 635; Ford v. State, Tex.Cr.App., 477 S.W.2d 27; Lipscomb v. State, Tex.Cr.App., 467 S.W.2d 417.

In Meyer v. State, Tex.Cr.App., 416 S. W.2d 415, the prosecutor argued that:

"He makes the insinuation that this Defendant has told him that he wasn't guilty, but he won't take the stand under oath and tell you that."

This court held that since the prosecutor was referring to counsel, not the appellant, it was not a comment on the accused's failure to testify.

In Lipscomb v. State, supra, the prosecutor argued as follows:

"I thought that with two of them talking here, that maybe one of them would say their client was innocent, but I never heard that, and it seems to me that if I were trying the wrong man, or if I were called upon to defend somebody and had the wrong man or had someone who didn't commit the crime, you would stand up before twelve jurors and say, this man is innocent."

Similarly we held that in the aforementioned argument, the prosecutor was referring to counsel and there was no allusion to appellant. See Jackson v. State, Tex. Cr.App., 501 S.W.2d 660.

In the case at bar, we are faced with a unique situation in that appellant pro se engaged in final argument to the jury. Unlike Lipscomb v. State, supra, the prosecutor was referring to appellant, not his counsel, but appellant was acting pro se and assumed the role of counsel. The record reflects that during the course of appellant's pro se argument appellant mentioned several matters outside the record. The prosecutor was in the process of responding to appellant's argument outside the record when the complained of argument occurred.

While the statement is made that appellant never said that "he didn't do it," no facts are stated as to make it appear that this was a reference to his failure to testify. In reading the complained of argument, we conclude that the prosecuting attorney was referring to appellant's activities during his pro se argument. See Meyer v. State, supra.

■ Finally, assuming arguendo that the continuing argument of the prosecutor was error, the trial court sustained appellant's counsel's objections and instructed the jury to disregard the argument. While a mistrial was not granted, the court's charge further instructed the jury not to consider appellant's failure to testify. In light of the instructions and considering all the evidence in view of Ramos v. State, supra, we construe the argument in the case at bar to be harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Fontaine v. California, 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968); Ford v. State, Tex.Cr.App., 477 S.W.2d 27.

Appellant's second ground of error is overruled.

Appellant's remaining contention is as follows:

"The trial court committed reversible error in permitting the prosecution to introduce the testimony of a State's psychiatrist into evidence during the hear-

ing on punishment, as appellant did not raise the issue of mental incompetency and such evidence therefore violated appellant's Fifth Amendment right against self-incrimination, and as appellant was not represented by counsel nor advised as to his right to counsel prior to, during or concerning such psychiatric examination and therefore such evidence constitutes a violation of appellant's Sixth Amendment right to counsel."

In the instant case, appellant did not raise the issue of insanity. During the punishment phase of the trial, appellant's mother and sister testified that they believed appellant could be rehabilitated. In rebuttal, the State called Dr. Grigson, a psychiatrist, to testify over the objections raised in the abovementioned ground of error. Dr. Grigson testified that appellant had not been insane and was not insane at the time of trial. Grigson further stated that appellant had a severe sociopathic personality disorder.[3] It was Grigson's conclusion that sociopaths like appellant could not be rehabilitated by incarceration.

■ Relying on Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), appellant argues that a psychiatric examination constitutes a "critical stage" of a criminal proceeding at which an accused is entitled to the presence and assistance of counsel. We have recently decided this issue adverse to appellant.

In Stultz v. State, 500 S.W.2d 853, appellant presented the precise constitutional claims based on the Fifth Amendment privilege against self-incrimination and the Sixth Amendment's guarantee of the right to counsel. In holding the claim to be without merit this Court, speaking through Judge Douglas, stated:

"We are unable to comprehend the function an attorney is to perform if his presence at a psychiatric examination were to be required. . . . A psychiatric examination is not an adversary proceeding. Its purpose is not to aid in the establishment of facts showing that an accused committed certain acts constituting a crime; rather, its sole purpose is to enable an expert to form an opinion as to an accused's mental capacity to form a criminal intent . . . ."

See also Blankenship v. State, Tex.Cr. App., 432 S.W.2d 945; United States v. Williams, 456 F.2d 217 (5th Cir. 1972).

We held in Stultz, supra, that the trial court did not err in admitting the testimony of the expert medical witnesses on the issue of insanity based on their examinations of the appellant conducted without the assistance of his counsel.

■ While the issue of insanity was raised in Stultz, supra, and two psychiatrists and a psychologist testified concerning the results of the defendant's mental examination, the fact that the defense of insanity was not relied on by appellant is not dispositive of the instant case. Appellant offered testimony that he was capable of being rehabilitated. Therefore, he is not in a position to complain if the State elicits information in rebuttal of the same issue. See Armstrong v. State, Tex.Cr. App., 476 S.W.2d 703; Frison v. State, Tex.Cr.App., 473 S.W.2d 479.

Appellant's third ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.

---

3. Grigson testified that a sociopath was defined as an individual who has a disregard for societal rules, familial rules, moral rules and legal rules. Grigson further stated that sociopaths rarely fear punishment because they feel that "they can get away with it."